UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INNOVATION VENTURES, L.L.C.,
d/b/a LIVING ESSENTIALS,

    Plaintiff/Counter-Defendant,    CIVIL CASE NO. 11-13537

v.    HONORABLE STEPHEN J. MURPHY, III

ASPEN FITNESS PRODUCTS, INC.,
d/b/a ON GO ENERGY d/b/a BEV
LABS d/b/a ON GO ENERGY SHOT,
et al.,

    Defendants, and

ASPEN FITNESS PRODUCTS, INC.,
et al.,

    Counter-Plaintiffs.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
INNOVATION VENTURES' MOTION TO DISMISS AMENDED
COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSE 31** (docket no. 22 )

This matter is before the Court on the motion to dismiss the amended counterclaim and to strike affirmative defense 31 filed by Counter-Defendant Innovation Ventures LLC d/b/a Living Essentials ("Innovation"). ECF No. 22. After reviewing the motion, the Court finds that a hearing is not required for determination. *See* E.D. Mich. L.R. 7.1(f). For the reasons that follow, the Court will grant the motion in part and deny it in part.

**BACKGROUND**

Innovation filed its eight-count complaint seeking damages and injunctive relief against Defendants Aspen Fitness Products, Inc., On Go Energy Enterprises LLC, On Go International LLC, On Go Gamer, LLC, Aspen Media, LLC, (collectively "Aspen") and

Derrick George, the owner and CEO of Aspen. Innovation claims that Aspen has infringed its trademark and copyright and has misappropriated its trade secrets in relation to its product, "5-hour Energy," a "liquid dietary supplement" that is sold in stores throughout the United States and Canada. Compl. ¶ 1, ECF No. 1. Aspen also sells a liquid dietary supplement, which is distributed and marketed under the brand name "On Go Energy." Innovation claims that the caution label and picture of a "running man" printed on the "On Go Energy" bottles infringes its copyright and trademark. Additionally, Innovation alleges that Aspen wrongfully acquired trade secrets and other confidential information from Innovation's former employee, Kevin Zwierzchowski. *Id.* at ¶ 4. Innovation alleges that Aspen has "misappropriated [its] trade secret information, copyrighted work and trademark for [Aspen's] own economic benefit to directly compete with Plaintiff and obtain more advantageous pricing from Plaintiff's suppliers, distributors, and customers." *Id.* at ¶ 3.

Aspen responded to the complaint and filed a counterclaim, alleging that Innovation "has a monopoly in the energy shot market and has utilized fraudulent, illegal, and intentionally malicious actions in order to control the market and prevent competition." Countercl. ¶ 13, ECF No. 18. Aspen's counterclaim seeks damages against Innovation based on the following: I) tortious interference with business relations and expectancies; II) violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901); III) malicious prosecution; IV) abuse of process - criminal; V) abuse of process - bad faith enforcement of a falsely and/or fraudulently obtained copyright; VI) cancellation of false and/or fraudulently obtained copyright; and VII) abuse of process - bad faith trademark enforcement. Innovation filed a motion seeking to dismiss the counterclaim pursuant to Civil Rule 12(b)(6) and to strike Aspen's affirmative defense no. 31 pursuant to Civil Rule 12(f).

2

Thereafter, Aspen filed an amended counterclaim, which clarified certain claims and added an additional count seeking a declaratory judgment that the "On Go Energy" trademark and trade dress do not infringe any of Innovation's trademarks or trade dress. Am. Countercl.¶¶ 133-140, ECF No. 23. Aspen submits that Innovation's motion to dismiss has been rendered moot based on the amended pleading. The Court agrees that some of Innovation's arguments have been rendered moot by the amendment but will address those that remain.

## STANDARD OF REVIEW

To survive a motion to dismiss filed pursuant to Civil Rule 12(b)(6), the complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 557 (citations omitted). Accordingly, Civil Rule 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001).

The Rule does not require a claimant to set out in detail the facts upon which he bases his claim. Although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

3

**DISCUSSION**

I. <u>Tortious Interference</u>

Innovation submits that Aspen's claim for tortious interference with a business relationship or expectancy should be dismissed because it has failed to plead sufficient facts to support the claim. The elements of a tortious interference with business relationship are: "(1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship or expectancy; and (4) resulting damage to the plaintiff." *Warrior Sports v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 286 (6th Cir. 2010) (citations omitted). To establish the third element, the plaintiff must "demonstrate that the third party was induced either to breach the contract or to break off the prospective business relationship by an intentional act that is either (1) wrongful per se; or (2) lawful, but done with malice and unjustified in law." *Id.* (citation omitted).

Aspen alleges it was involved in negotiations with Exxon Mobile ("Exxon") and with 7-Eleven to sell its products in those stores. Am. Countercl. ¶¶ 46, 61. It claims that Innovation was aware of these discussions because it also discussed marketing and distribution with these companies. *Id.* at ¶¶ 48, 63. Additionally, Defendant George allegedly had a telephone conversation with an Exxon representative who indicated he had discussed "On Go Energy" products with Innovation representatives and was informed by them that Innovation was going to file a lawsuit against Aspen and George. *Id.* at ¶ 49. Aspen claims that Exxon's representative indicated that while he was at Innovation's offices, "he was informed that it was becoming a business strategy of Innovation Ventures to sue its competitors in order to drive them out of the energy shot market by making

4

competitors incur costs and attorney's fees in order to defend against Innovation's claims." *Id.* at ¶ 50. Aspen alleges it prepared to sell its products in Exxon stores by ordering more than 700,000 bottles of "On Go Energy" shots but Exxon refused to take shipment of the products as a result of Innovation's threats of litigation. *Id.* at ¶ 56. Accordingly, Aspen has adequately alleged all four elements of tortious interference with a business expectancy. It has also sufficiently alleged Innovation acted with malice "by fraudulently informing distributors and retailers that the counter-plaintiffs had acted in violation of criminal and civil laws and that the retailers should therefore not accept any On Go Energy products." *Id.* at 70. Therefore, Innovation's motion to dismiss is denied as to this claim.

II. Michigan Consumer Protection Act

Innovation argues that Aspen has not sufficiently alleged a violation of the Michigan Consumer Protection Act because its allegations are "unduly vague" and therefore Living Essentials "has not adequately been put on notice of the claims against it." Mot. to Dismiss Countercl. 9. The amended counterclaim addresses the issues raised in Innovation's motion to dismiss by identifying the specific sections of the statute Aspen alleges Innovation violated. Mich. Comp. Laws § 445.901(3)(f) prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" including "disparaging the goods, services, business, or reputation of another by false or misleading representation of fact." Aspen claims Innovation violated Mich. Comp. Laws §§ 445.901(1)(f) & (s)[1] by disparaging Aspen's "goods, services, business or reputation . . .

---

[1] The section actually referred to is Mich. Comp. Laws §§ 445.903(1)(f) & (s). Innovation recognized this was the section Aspen intended to cite and references the correct citation in its reply brief.

5

by false or misleading representations of fact including but not limited to threats of litigation and informing retailers, distributors, and customers that the On Go Energy products infringed Innovation Ventures' trademarks and/or copyrights, that [Aspen] [was] in violation of the law, and that On Go Energy products could not be sold." Am. Countercl. ¶ 76. Thus, Aspen has properly alleged a violation of the statute.

Similarly, Mich. Comp. Laws § 445.901(3)(s) prohibits unfair and deceptive acts of "failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Aspen claims that Innovation violated the statute by, among other things, not revealing to consumers in the energy shot industry that "any criminal proceedings instituted by Innovation against [Aspen] [have] been terminated favorably." Am. Countercl. ¶ 77. Thus, Innovation has been provided adequate notice as to the claims against it and its motion to dismiss this claim will, therefore, be denied.

III. Malicious Prosecution

Innovation seeks to dismiss Aspen's claim for malicious prosecution because there has been no criminal prosecution. The Federal Bureau of Investigation ("FBI") executed a search warrant and raided Aspen's offices in June of 2009. Am. Countercl.¶¶ 84-85. This investigation did not result in criminal charges being filed. *Id.* at ¶ 88. To succeed on a claim for malicious prosecution, the plaintiff must show "(1) that the defendant initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing offender to justice." *Matthews v. Blue Cross & Blue*

6

*Shield of Michigan*, 456 Mich. 365, 609-10 (1998). Aspen states "[n]o criminal charges have been filed against any of the counter-plaintiffs, including Derrick George, and the FBI has ceased to prosecute, proceed further, or investigate any claims." Am. Countercl, ¶ 88. Because Aspen admits no criminal charges have been filed, it has failed to state a claim for malicious prosecution and, therefore, this count of the amended counterclaim will be dismissed.

IV. <u>Abuse of Process</u>

Innovation submits that all three of Aspen's abuse of process claims, count IV (abuse of process regarding the criminal investigation), count V (abuse of process for fraudulently obtaining copyright), and count VII (abuse of process in filing the instant suit for bad faith trademark enforcement) should be dismissed because they fail to state claims as a matter of law. To state a claim for abuse of process, a plaintiff must plead: "(1) an ulterior purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding." *Partrich v. Farber,* 488 Fed. App'x 526, 529 (2011) (quoting *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981)). "A meritorious claim of abuse of process contemplates a situation where the defendant has availed himself of a proper legal procedure for a purpose collateral to the intended use of that procedure, e.g., where the defendant utilizes discovery in a manner consistent with the rules of procedure, but for the improper purpose of imposing an added burden and expense on the opposing party in an effort to conclude the litigation on favorable terms." *Vallance v. Brewbaker*, 161 Mich. App. 642, 646 (1987).

Aspen alleges in count IV that Innovation's complaints led to an FBI investigation against Aspen "as retaliation for the counter-plaintiffs' negotiations regarding a potential

independent contractor relationship with Innovation's former employee, Kevin Zwierzchowski, with an intent to destroy the potential business relationship between the counter-plaintiffs and this non-party." Am. Countercl. ¶ 94. But a criminal investigation, although invasive, is not "process" as part of a legal proceeding between adverse parties. *See Vallance*, 161 Mich.App. at 646 (stating abuse of process involves a "legal procedure" and giving an example of discovery, a defined legal proceeding for which rules of procedure exist). Thus, no process was abused and count IV must be dismissed.

Next, Aspen alleges in count V that Innovation fraudulently obtained its copyright of the subject caution label so that it could "pursue lawsuits against its competitors who use similar ingredients in their energy shots, in order to drive them out of the market and increase Innovation Ventures' market share." Am. Countercl. at ¶ 100. In *Friedman*, the court held the "process" to be abused was the summons and complaint between adverse parties. *Friedman*, 412 Mich. at 31. Here, in contrast, there was no "process" served upon Aspen for Innovation to abuse. Thus, Innovation's trademark filing cannot be an abuse of process.

Aspen claims in count VII that although Innovation knew that Aspen's running man silhouette was not similar to its own trademarked running man silhouette, Innovation filed the present lawsuit "to cause [Aspen] to incur costs and attorney's fee[s] in an attempt to drive [Aspen] out of the market." Am. Countercl. at ¶ 125. But filing a lawsuit, even if for malicious purposes, is not an improper use of process. "[A] summons and complaint are properly employed when used to institute a civil action." *Friedman*, 412 Mich. at 31. The liability "imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process." *Moore v. Michigan Nat. Bank*,

368 Mich. 71, 75 (1962). Aspen alleges an improper motive but does not allege "an act in the use of process that is improper in the regular prosecution of the proceeding." *See Partrich,* 488 Fed. App'x at 529. Accordingly, Innovation's motion to dismiss will be granted as to the abuse of process claims.

V. Copyright Cancellation

Innovation argues Aspen's claim challenging the validity of the copyright must be dismissed because Innovation's copyright has already been declared valid as a matter of law. Innovation cites *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 635 F.Supp.2d 632 (E.D. Mich. 2008) for this proposition. The citation references an order denying a motion to dismiss and/or for summary judgment filed by N2G Distributing, claiming Innovation had not stated a claim for copyright infringement because Innovation's copyright was not valid. The court in that case found "[b]ecause the medical caution statements appearing on the energy shots have appreciable differences, and stylistic flourishes may be inserted in the statement, the medical caution label has the minimum level of originality necessary to warrant copyright protection as a matter of law." *N2G Distrib., Inc.*, 635 F. Supp. 2d at 640.

At issue here is the effect of the ruling to this case. Innovation argues this ruling constitutes a binding decision that Aspen is now barred from challenging, also known as issue preclusion, or collateral estoppel (in which a party seeks to use facts from a previous litigation as a shield against future litigation from a different adverse party).

"In non-diversity cases in federal court, federal collateral estoppel rules apply in determining the effect of a prior judgment." *Laborers' Pension Trust Fund Detroit & Vicinity v. Lange,* 825 F. Supp. 171, 175 (E.D. Mich. 1993). For collateral estoppel to be valid, "(1)

the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987) (citing *Montana v. United States*, 440 U.S. 147, 157-58, 162, (1979); *Commissioner v. Sunnen*, 333 U.S. 591, 600 (1948)).

Here, Innovation clearly cannot meet the fourth prong. The party against whom estoppel is sought, Aspen, did not have a full and fair opportunity to litigate the issue in the prior proceeding. The prior proceeding involved Innovation's lawsuit against N2G Distributing, Inc., and Alpha Performance Labs. Aspen was not a party, and therefore had no opportunity to litigate the issue. The question of copyright validity is not precluded under the doctrine of claim preclusion. Additionally, the consent judgment Innovation relies on was entered pursuant to the terms of a settlement agreement between Innovation and the Texas defendants and only binds the parties to that action. Consent J., ECF No. 22-; *See Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (noting that generally a person is not bound by a judgment in a litigation in which he or she "is not designated as a party or to which he has not been made a party by service of process.")(quotation omitted). Accordingly, Innovation's motion to dismiss this claim is denied.

VI. <u>Affirmative Defense 31</u>

Innovation moves pursuant to Civil Rule 12(f) to strike Aspen's affirmative defense no. 31. The Rule provides that a court "may strike from a pleading an insufficient defense, or any redundant, immaterial, or scandalous matter." Fed. R. Civ. P. 12(f). Aspen's

affirmative defense no. 31 asserts: "[t]he names, marks, trade dress claims, copyrights, and registrations asserted by the plaintiff against defendants in this case are being used to violate the antitrust laws of the United States." This affirmative defense is recognized as a defense to a trademark claim by 15 U.S.C. §1115(b)(7). The Court will, therefore, deny the motion to strike.

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that Innovation's motion to dismiss and to strike affirmative defense (docket no. 22) is **GRANTED** in part and **DENIED** in part as set forth above.

**SO ORDERED.**

s/Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: September 30, 2012

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2012, by electronic and/or ordinary mail.

Carol Cohron  
Case Manager
